UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BARTHOLOMEW BISHOP, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-2276-SEM-EIL |
| ) | |
| FELICIA ADKINS, et al., ) | |
|     Defendants. ) | |

### MERIT REVIEW ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff *pro se* Bartholomew Bishop has filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, which is now before the Court for screening.  Plaintiff has also filed a Motion to Request Counsel (Doc. 5).  For the following reasons, Plaintiff's Complaint is dismissed without prejudice and his request for counsel is denied.

### I. COMPLAINT

#### A. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is

immune from such relief." *Id.* In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Facts Alleged

At all times relevant to his Complaint, Plaintiff was an inmate within the Illinois Department of Corrections ("IDOC") at Danville Correctional Center ("Danville"). Plaintiff's Complaint names as Defendants Danville Warden Felicia Adkins, OSF Healthcare Saint Francis Medical Center in Peoria ("OSF Peoria"), and APRN Jamie Lee Hume.

Plaintiff alleges that on September 25, 2024, he was involved in an incident with another inmate in which he hit his head, had a seizure, and lost consciousness. Correctional staff took Plaintiff to OSF Hospital in Danville, where the hospital determined that Plaintiff had suffered multiple fractures to his head and face and must be transported to OSF Peoria's trauma center. Plaintiff was

admitted to OSF Peoria and taken to see the facial surgeon and eye doctor.

The next day, after Plaintiff alleges the doctors told him he would not need surgery, he ate an apple and one of his teeth became loose. He told the correctional officer who was with him, who told a nurse. Plaintiff next alleges:

> After a while a man came into the room with a tool box. He asked me what tooth was loose and I showed him which one it was. He numbed my gums and pulled the tooth. Then he went back into my mouth and I protested. He said "this other tooth will grow in crooked so I have to pull it." I protested again but he was already pulling the other tooth. I explain[ed] to him nothing was wrong with the tooth but he pulled it anyway. While he was pulling the teeth my C/O Martin asked him how long he [had] been doing this and the man said he only took a few classes. He then attempted to put stitches in my mouth but [the stitches] came out 2 min[ute]s after he left.

Plaintiff alleges that he was released from the OSF Peoria trauma center and returned to Danville Correctional Center, where he was transferred to segregation within one day and without ever seeing a doctor.

Plaintiff alleges that he was in segregation from September 28 to October 24, 2024, without any medical checkup or dental appointment. While in segregation, Plaintiff alleges that he had two

seizures. He alleges that he notified a nurse but still was not seen for a medical appointment.

In addition, the dentist allegedly told Plaintiff that he could not be seen until he was released from segregation. Plaintiff saw the dentist after approximately six weeks and was put on a list to receive implants for the two teeth that were pulled in the hospital.

Finally, Plaintiff also alleges that he was not allowed to see his psychiatrist for the month that he was in segregation, despite asking to do so because his mental health was deteriorating. Plaintiff is designated seriously mentally ill ("SMI") and diagnosed as bipolar with a history of suicide.

Plaintiff generally alleges that Danville is not following administrative directives and policies.

**C. Analysis**

In order to state an Eighth Amendment claim of deliberate indifference to a serious medical need, a complaint must adequately allege that (1) the plaintiff had an objectively serious medical need, and (2) the defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

"Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017), *quoting King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

Plaintiff has adequately pled that he suffered from objectively serious medical needs, in the form of facial and dental injuries, seizures, and psychiatric diagnoses.

However, "[s]ection 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Therefore, to hold Defendants liable under § 1983, Plaintiff must allege that "the defendants were personally responsible for the deprivation of their rights." *Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016).

Plaintiff has not done so. Plaintiff first identifies Danville Warden Adkins as a Defendant. But supervisor liability is not permitted under section 1983. *Smith v. Gomez,* 550 F.3d 613, 616

(7th Cir. 2008). Plaintiff has generally alleged that Danville violated certain administrative directives or policies. But this claim is conclusory and does not adequately allege what role, if any, Defendant Adkins played in these alleged policy violations. Nor has Plaintiff alleged sufficient facts for the Court to find that those policy violations plausibly constituted deliberate indifference towards his medical needs. *See Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) (violation of a prison's rule may be relevant evidence to show malicious intent or retaliatory motive, even if it does not give rise to a standalone constitutional claim); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects plaintiffs from constitutional violations, not from departmental regulations and practices).

The Court also notes that although at this stage the Court must liberally construe the alleged facts in Plaintiff's favor, it need not accept conclusory statements or facts that do not plausibly state a claim for relief. *See Turley*, 729 F.3d at 649; *Alexander*, 721 F.3d at 422. Here, Plaintiff has attached as exhibits to his Complaint various medical records. Although Plaintiff alleges, in the body of the Complaint, that he received no medical or dental

attention at Danville while he was in segregation from approximately September 28 to October 24, 2024, his attached exhibits contradict that assertion. Specifically, Plaintiff has attached records that show he saw a nurse practitioner on October 2, 2024, a registered nurse on October 8, 2024, a doctor on October 9, 2024, and a nurse practitioner on October 16, 2024.

Plaintiff next seeks to sue OSF Peoria. But OSF Peoria is not subject to suit under section 1983. "Section 1983 only permits an individual to sue a person who deprives that individual of his or her federally-guaranteed rights *under color of state law*." *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014) (emphasis added, internal quotations omitted); *see also Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797-98 (7th Cir. 2014) ("A business like Wexford that contracts to provide medical care to prisoners…acts under color of state law for purposes of § 1983" but private "medical providers who have only an incidental or transitory relationship with the penal system generally are not considered state actors." (internal quotations omitted)).

Finally, Plaintiff wishes to bring a claim against APRN Jamie Lee Hume. However, beyond listing Hume as a Defendant Plaintiff's

Complaint does not contain any reference to Hume whatsoever. It is unclear what medical care Defendant Hume allegedly provided or failed to provide. In short, Plaintiff cannot proceed on a claim against Hume without any allegations of personal involvement by that Defendant. *See Vance*, 97 F.3d at 991. In addition, in the event that Hume might be an OSF employee, Plaintiff may not pursue a § 1983 claim against a private medical provider. *See Shields*, 746 F.3d at 797-98.

## II. REQUEST FOR COUNSEL

A pro se litigant has no right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). However, the federal statute authorizing in forma pauperis status provides a court "may request an attorney to represent any person unable to afford counsel." See 28 U.S.C. 1915(e)(1). A court does not have the authority to require an attorney to accept pro bono appointments in civil cases. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).

When considering a request for counsel by a pro se litigant the Court undertakes a two-part inquiry: (1) whether the plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so, and, if so, (2) given the difficulty of the

case, does the plaintiff appear competent to litigate it himself. *Pruitt*, 503 F.3d at 655.

As to the first inquiry, plaintiffs normally make this showing by filing copies of letters sent to several attorneys seeking assistance, along with copies of the responses they received from the attorneys they contacted. Plaintiff has attached as exhibits two letters from attorneys declining to represent him.

Even if the Court finds that Plaintiff has met the first, threshold requirement, Plaintiff has failed to satisfy the second requirement.

The Court must consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. This inquiry must be a "practical one, made in light of whatever relevant evidence is available on the question." *Id.* The court should take account of all evidence in the record relevant to the plaintiff's ability to litigate. *Navejar*, 728 F.3d at 696. Such evidence may include any physical, intellectual, or psychological limitations the plaintiff may have and the practical problems the plaintiff may encounter in gathering evidence from

individuals employed by an institution where he is no longer housed. *Navejar*, 718 F.3d at 698.

In his Motion, Plaintiff attests that he has completed some college and that his ability to speak, write, and/or read English is limited.

However, the Court finds that Plaintiff was able to communicate the alleged facts contained in his Complaint in a clear, organized manner. Plaintiff clearly has knowledge of the relevant events at issue, as well as access to various relevant records, medical records, which he attached as exhibits to his Complaint.

Recruiting pro bono counsel in this District is difficult, as the need far exceeds the supply. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("District courts are thus inevitably in the business of rationing a limited supply of free lawyer time."). Although "[a]lmost everyone would benefit from having a lawyer, [] there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (internal quotation omitted); *Mejia v. Pfister*, 2021 WL 647085, * 4 (7th Cir. Feb. 19, 2021) ("For its part, the

district court found itself having to [choose] how best to allocate scarce resources, for it remains the sad reality that there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.") (internal quotation omitted).

Assistance in recruiting counsel is appropriate only where the plaintiff shows his case is one of those few in which it appears from the record the legal and factual difficulty exceeds his ability to prosecute. *Pruitt*, 503 F.3d at 654-55. This question is different from whether a lawyer might do a better job. *Id.*

Upon a full review of the record before it at this time, the Court finds Plaintiff is able to represent himself at this stage of the case. Therefore, Plaintiff's Motion (Doc. 5) is DENIED without prejudice. Plaintiff may renew the request should his circumstances change and if this case proceeds past merit review screening.

**IT IS THEREFORE ORDERED:**

**1) Plaintiff's Complaint [1] is dismissed, without prejudice, for failure to state a claim.**

**2) Plaintiff's Motion to Request Counsel [5] is DENIED without prejudice.**

**3) Plaintiff is granted leave to file an amended complaint, within 21 days. If Plaintiff does not file an amended complaint**

**by that date, or if the amended complaint still fails to state a claim, then this case will be dismissed with prejudice.**

ENTERED May 13, 2025.

s/ *Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE